Paul S. Aronzon (CA State Bar No. 88781)
Thomas R. Kreller (CA State Bar No. 161922)
MILBANK, TWEED, HADLEY & McCLOY LLP
601 South Figueroa Street, 30th Floor
Los Angeles, California 90017
Telephone:     (213) 892-4000
Facsimile:      (213) 629-5063

Proposed Reorganization Counsel for the
Debtor and Debtor in Possession

Bruce T. Beesley (NV SBN 1164)
Laury Macauley (NV SBN 11413)
LEWIS and ROCA, LLP
50 West Liberty Street, Suite 410
Reno, Nevada 89501
Telephone:     (775) 823-2900
Facsimile:      (775) 823-2929
bbeesley@lrlaw.com; lmacauley@lrlaw.com

Proposed Local Reorganization Counsel for the
Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Chapter 11 |
| GV RANCH STATION, INC. | Case No. BK-10-50381; |
| ☒ Affects this Debtor | **MOTION FOR ORDER PURSUANT TO 11. U.S.C. §§ 105, 364 AND FED. R. BANKR. P. RULE 4001(C) (I) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING AND (II) APPROVING PROPOSED CASH USE** |
| | Hearing Date:    Pending<br>Hearing Time:    Pending<br>Place:               300 Booth Street<br>                          Reno, NV 89509 |

**TO THE HONORABLE GREGG W. ZIVE, UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE AND ALL PARTIES IN INTEREST:**

GV Ranch Station, Inc. ("GV Ranch" or the "Debtor") in the above-captioned chapter 11 case, hereby submits this motion (the "Motion") pursuant to sections 105(a) and 364 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code"), Rule 4001(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001 of the Local Rules of Bankruptcy Procedure for the District of Nevada (as amended, the "Local Rules") seeking entry of an order, *inter alia*: (i) authorizing the Debtor to obtain postpetition financing

#4848-7095-7061

from Station Casinos, Inc. ("SCI") and (ii) authorizing the Debtor to maintain its current system of providing manager advances and equity investments in Green Valley Ranch Gaming, LLC ("Green Valley"). In support of this motion, the Debtor submits the declaration of Thomas M. Friel (the "Friel Decl.") and respectfully states as follows:

## I. JURISDICTION AND BASIS FOR RELIEF REQUESTED

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. The statutory basis for the relief requested herein is sections 105(a) and 364 of the Bankruptcy Code, and Bankruptcy Rule 4001(c) and Local Rule 4001.

## II. RELIEF REQUESTED

3. By this Motion, the Debtor seeks entry of an order (i) authorizing the Debtor to receive unsecured postpetition financing from SCI under the same terms and conditions as the Drop Down Loans it has received since the Station Petition Date, as such terms are evidenced by the form of Drop Down Loan Note (the "Drop Down Note") attached to the Friel Decl. as Exhibit 1, (ii) authorizing the Debtor to continue to make manager advances to and equity investments in Green Valley, and (iii) any other relief the Court deems proper. Pursuant to Bankruptcy Rule 4001(c), the principal provisions of the order, a proposed copy of which is attached as Exhibit 1 hereto (the "Order"), are as follows (capitalized terms used but not immediately defined herein shall have the meanings ascribed to them later in this Motion or in the Order, as the case may be):

    A. **Summary of Material Provisions of Postpetition Financing.**

        (a) Nature of Financing. SCI will lend funds to GV Ranch on the terms and conditions enumerated for the Drop Down Loans in the Drop Down Note and the Station Cash Collateral Order, attached as Exhibit 2 to the Friel Decl. Funds loaned in this capacity (the "Postpetition Financing") will be advanced on an unsecured, administrative priority basis under § 364(b) of the Bankruptcy Code.

        (b) Maturity Date. The maturity date for the Postpetition Financing is July 31, 2011 (the "Maturity Date").

        (c) Interest Rate. Interest accrues at a fixed rate per annum equal to the 2.78%, the 30-day LIBOR reported in the Wall Street Journal on

July 31, 2009 plus 2.5%. Interest accrues daily and shall be payable concurrently with the principal upon the Maturity Date, or as otherwise provided in the Station Cash Collateral Order.

**B.     Summary of Proposed Cash Use**

(a)     GV Ranch will use the proceeds from the Postpetition Financing to (a) make manager advances to Green Valley, as needed, and (b) make equity investments in Green Valley, in each case as required by the Operating Agreement for Green Valley.

In addition to the foregoing relief, the Debtor requests that the Court schedule, pursuant to Bankruptcy Rule 4001, a hearing on this Motion for this Court to consider entry of the Order and the relief set forth therein.

### III.     STATEMENT OF FACTS

4.     GV Ranch is a wholly-owned subsidiary of SCI. On February 10, 2010 (the "GV Ranch Petition Date"), GV Ranch filed for relief under chapter 11 in the United States Bankruptcy Court for the District of Nevada (the "Court").

5.     SCI and 17 of its affiliates filed for relief under chapter 11 in this Court on July 28, 2009 (Jointly Administered Case No. 09-52477). A motion requesting that GV Ranch's chapter 11 case be jointly administered with the chapter 11 cases SCI and its affiliated debtors and debtors in possession (collectively, the "Station Debtors") was filed on February 18, 2010.

6.     Pursuant to the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 552 and Fed. R. Bankr. P. Rule 4001(b), (c), and (d) (i) Authorizing the Debtors to (a) Use Cash Collateral; (b) Obtain Unsecured Postpetition Financing; (c) Make Loans to Non-Debtor Subsidiaries, (ii) Granting Adequate Protection to Prepetition Secured Parties, and (iii) Granting Related Relief*, (the "Station Cash Collateral Order") [Docket No. 481 in Jointly Administered Case No. 09-52477], SCI was granted the authority to make unsecured loans (the "Drop Down Loans") to certain of its subsidiaries that are not guarantors of SCI's prepetition indebtedness. In the Station Cash Collateral Order, these non-guarantor subsidiaries are referred to as the "Unrestricted Subsidiaries." The specific terms of the Drop Down Loans are set forth in the Drop Down Note; Generally, the terms are as follows: the Drop Down Loans are unsecured

#4848-7095-7061                                                -3-

loans maturing on July 31, 2011 with an interest rate of 2.78% that accrues daily and is payable concurrently with the principle upon the Maturity Date.

7. As an Unrestricted Subsidiary, GV Ranch has been a recipient of several Drop Down Loans from SCI since the Station Cash Collateral Order was entered. The proceeds of the Drop Down Loans are used by GV Ranch to fulfill its duties as manager and 50% owner of Green Valley, the entity that operates the Green Valley Ranch Resort, Spa & Casino. These duties are satisfied in part through monthly manager advances of funds for working capital and general corporate purposes, as well as equity investments in Green Valley as required by the Operating Agreement for Green Valley Ranch Gaming, LLC (the "Green Valley Operating Agreement") dated as of March 10, 2000. The parties to the Green Valley Operating Agreement are Green Valley, GCR Gaming, LLC, GV Ranch, as a member and GV Ranch as manager. A copy of the Green Valley Operating Agreement, with all amendments, is attached to the Friel Decl. as Exhibit 3 thereto.

8. GV Ranch records all Drop Down Loans, manager advances and equity contributions on its books and records. However, for administrative convenience, all funds actually flow directly from SCI to Green Valley, and are never physically in GV Ranch's possession or deposited in any account owned by GV Ranch. As of January 31, 2010, SCI has made Drop Down Loans in the aggregate amount of $6,329,775.19 to GV Ranch. From that amount, GV Ranch has made cash equity contributions in the aggregate amount of $5,950,000.00 to Green Valley. The balance of $379,775.19 was used to make manager advances.

9. In its capacity as manager of Green Valley, GV Ranch provides day to day management of all aspects of the operations of Green Valley, pursuant to the Section 3.4 of the Green Valley Operating Agreement. In the discharge of these duties, GV Ranch from time to time advances Operating Costs (as defined in the Green Valley Operating Agreement) for which GV Ranch is entitled to reimbursement, pursuant to Section 3.5(c) of the Green Valley Operating Agreement. GV Ranch routinely and in the ordinary course of its business as manager of Green Valley incurs obligations to third party vendors, etc. for the benefit of Green Valley. GV Ranch

Station would not be able to efficiently discharge its duties as manager of Green Valley if GV Ranch was precluded from making such reimbursable advances from time to time, to facilitate the smooth operation of Green Valley.

10.     In addition to making manager advances to Green Valley in its capacity as manager, GV Ranch also from time to time, in its capacity as a 50% member of Green Valley, also makes cash equity contributions to Green Valley that are matched on a dollar for dollar basis by the other 50% member of Green Valley, GCR Gaming, LLC.  Pursuant to Section 4.2 of the Green Valley Operating Agreement, upon a determination of the Executive Committee that additional capital contributions are needed by Green Valley, each of GV Ranch and GCR Gaming, LLC provide one half of the additional capital needed.  If GV Ranch is unable to continue making cash equity contributions to Green Valley as determined by the Executive Committee, then Green Valley may need to curtail operations due to reduced cash resources and the value of GV Ranch's equity holdings in (and management agreement with) Green Valley could be diminished.

11.     All of GV Ranch's creditors are unsecured.  Accordingly, this Motion does not address any issues regarding use of cash collateral or grant of adequate protection as neither statutory requirement for use of cash applies to GV Ranch.

12.     GV Ranch acknowledges that the availability of Drop Down Loans is subject to SCI's continuing authority to make Drop Down Loans under the SCI Cash Collateral Order.  No alteration of rights of the Prepetition Lenders (as such term is defined in the SCI Cash Collateral Order) under the SCI Cash Collateral Order is requested or intended by this Motion.

### IV.     BASIS FOR RELIEF

13.     It is a reasonable exercise of GV Ranch's business judgment to continue receiving funds from SCI in the form of DIP financing.  When considering whether a debtor's reasonable business decision should receive deference in entering postpetition financing arrangements, courts look to whether the financing agreement contains terms that unduly leverage the bankruptcy process in favor of the DIP financing lender, as well as whether the

purpose of the financing is primarily arranged to benefit a third party rather than the estate. *See In re Ames Department Stores, Inc.*, 115 B.R. 34 (Bankr. D. Del. 1994).

14. In order to maintain the status quo for its operating subsidiary, GV Ranch must pursue some form of DIP financing. Continuing the current lending arrangement with SCI will provide GV Ranch with the most efficient way to fulfill its obligations to Green Valley and turn its attention to its role as a debtor in possession for the remainder of its chapter 11 case.

15. The terms of the Drop Down Loans do not provide SCI with any notable leverage over the Drop Down Borrowers, nor are the terms of the Drop Down Loans disproportionately beneficial to SCI. As a debtor in possession lending proceeds from its own DIP financing source, SCI is not in a position to exact unreasonable or unfair terms over the operating loans it makes to its subsidiaries. It follows, then, that allowing the current stream of Drop Down Loans to GV Ranch to continue as DIP financing, on the same terms as the Drop Down Note authorized by the SCI Cash Collateral Order, represents a demonstrably sound method for infusing GV Ranch with the cash it needs to support its subsidiary while satisfying the reasonableness standard inherent in judicial review of DIP financing arrangements.

16. It must also be noted that the Debtor's pending motion to jointly administer the Debtor's case with the Station Cases adds another factor in favor of granting the Motion. Green Valley represents one of the principal assets and operating subsidiaries of SCI and its estate. It is part of the collection of operating subsidiaries that serve as the source of substantially all of the Station Debtors' revenues. To the extent the proposed DIP financing arrangement benefits SCI, such benefit will be contained within the collective pool of jointly administered estates of which GV Ranch will soon be a part. Ultimately, this arrangement is wholly beneficial to all of the affected debtors and debtors in possession.

17. In addition to continuing its borrowing activity, GV Ranch should be authorized to continue to make manager advances and cash equity contributions to Green Valley as contemplated by the Green Valley Operating Agreement. Unless GV Ranch is permitted to continue this activity, both the value of GV Ranch's investment in Green Valley and the prospects for GV Ranch to continue to earn management fees could be detrimentally impacted.

|   |   |
|---|---|
| 1 | 18. In this case, GV Ranch must be allowed to continue receiving loans from SCI without delay in order to avoid disrupting operations at Green Valley Ranch Resort Spa & Casino. In the absence of approval, GV Ranch will be impeded in its ability to preserve the going concern value of the subject property, to the detriment of the GV Ranch estate and creditors and, ultimately, to the detriment of the Station Debtors' estates and creditors. |

19. Based on the foregoing, GV Ranch respectfully requests that the Postpetition Financing and the proposed cash use be approved.

## V.    NOTICE

20. Notice of this Motion will be given by hand delivery or facsimile to: (i) the Office of the United States Trustee for the District of Nevada, (ii) the Debtor's largest unsecured creditors (including counsel), (iii) Deutsche Bank Trust Company Americas, 60 Wall Street, 2nd Floor, New York, New York 10005 (Attn: Christopher J. Young); and (iii) all parties requesting notices pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). The Debtor submits that no other or further notice need be provided.

21. No previous motion for the relief sought herein has been made to this or any other Court.

**VI.     CONCLUSION**

Based upon all of the foregoing, GV Ranch respectfully requests that the Court grant this Motion in its entirety and (i) approve the Postpetition Financing, (ii) approve the proposed cash use to the extent provided herein, (iii) enter the Order; and (iv) grant to the Debtor such other relief as the Court deems just and proper.

Dated: February 19, 2010              Respectfully submitted,

By:     /s/ Paul S. Aronzon
Paul S. Aronzon, CA State Bar #88781
Thomas R. Kreller, CA State Bar #161922
MILBANK, TWEED, HADLEY & McCLOY LLP
601 South Figueroa Street, 30th Floor
Los Angeles, California 90017

Proposed Reorganization Counsel for
Debtors and Debtors in Possession


Bruce T. Beesley, #1164
Laury Macauley, #11413
LEWIS AND ROCA LLP
50 W. Liberty Street, Ste. 410
Reno, NV   89501
bbeesley@lrlaw.com; lmacauley@lrlaw.com

Proposed Local Reorganization Counsel
For Debtors and Debtors in Possession

#4848-7095-7061                             -8-